May it please the Court, Bishop Grewell, on behalf of the United States, I will attempt to reserve three to four minutes of rebuttal time. This appeal this morning is about protecting women in Indian Country. Your Honors have read the statistics in our brief. Congress found that from 1979 to 1992, homicide was the third leading cause of death among Native American women aged 15 to 34. And that's a good legislative argument, but really our question is one of statutory interpretation. Could you tell me how the Smith case helps you? Certainly. In the Smith case, the Court decided, was dealing with the same provision, was trying to decide whether in the prior proceeding the defendant had waived his right to counsel. It was in State court, and the Court noted that he didn't actually have a Sixth Amendment right to counsel in that prior proceeding because what had happened was he had simply been fined, so there had been no prison time. But it felt that it still had to determine under the statute whether he had knowingly and intelligently waived his right to counsel because he did have a right to counsel under State law. And so we believe that that shows that the right to counsel in the provision that the Court in Smith was looking at was not some general Sixth Amendment right to counsel, as Mr. First argues that the statute provides, but rather the right to counsel that he had in the prior case. The right to counsel that he had in the prior case, there was a higher right to counsel than the Sixth Amendment right to counsel. It was a right to counsel that existed even when the Sixth Amendment right to counsel did not. Well, but the Smith case, you know well, in the Smith case, Smith signed a form waiving his right to counsel before entering the plea. So are you telling me in that proceeding he did not have the right to counsel? I'm saying he did have a right to counsel, but he only had that right to counsel because of State law under the Iowa law. How does that help you in this case? I don't quite see the connection between Smith and this case. Because the defendant here is arguing that the only that the right to counsel language means the Sixth Amendment right to counsel. In the Smith case, he didn't have a Sixth Amendment right to counsel. He had a right to counsel under State law that was broader than the Sixth Amendment right to counsel. But the key to the Smith case seems to me to be that he had a lawyer. The lawyer didn't show up, so he signed a waiver. And the question was whether the waiver was valid. Here, you don't even have a waiver. Aren't you torturing the term in that --"in the case"? I mean, it's used twice. But you say because it's used twice, the second time must mean something different. And I'm having a hard time following that. It seems to me that it means the same thing. In the case. So you look at the case, and I know you argue that, well, then, that doesn't work because there's not no right, so it doesn't work. But why is the case necessarily different because it's used twice? Because in the second case, we believe it's modifying something different there. It's not that the meaning of the word in the case means something different. It's that what it's modifying is different. In that case, it's modifying the right to counsel in the case. So what was the right to counsel that you had in the prior proceeding? And we do have a waiver here. We have a waiver of the right to retain counsel, which the Indian Civil Rights Act provides. So there is a waiver. And our argument is that that is the only thing that's required because that was the right to counsel that exists in those proceedings, and that's what the language means here. I do agree with Your Honor that if we just looked at that simple sentence, that there are two different interpretations you could apply to that simple sentence. But when you're looking at interpretation, we don't just look at that single sentence. We then have to look at the structure and the context and the purpose of the Act as well to determine whether this is ambiguous or not. And when you look at the structure, the fact that we're concerned with that Congress wanted tribal misdemeanor convictions to be used as well, if you accept that, the statute, no misdemeanor conviction that's the result of a guilty plea in tribal court will be used. The exception will swallow the rule. The only tribal court convictions that will be used are those where the guy was actually represented by counsel. Roberts. But do you seriously contend that Congress had that kind of a subtle interpretation in mind when it used that phrase the second time? We are – it's not clear which way Congress meant that to go. That indicates language to go. It could mean the way we say it. It could mean the way they say it. But then when you look at the broader context, we believe that's the best way to read it. But that's true. Doesn't the rule of lenity kick in if it could go either way? The rule of lenity only kicks in once we've used all the other interpretive tests – all the other interpretive tools that we have. So that includes the statutory purpose, which are – Have you read Scalia's new book, by the way? I – I have – I have not read it cover to cover, but I have looked in it. There's about 4,000 ways to interpret it. That's sort of irrelevant. But it just seems to me that, you know, if you use the rule of lenity and you look at this language, that the district court was right. Well, and I think you – but I don't think you would get to the rule of lenity. And the reason I don't think we get there, as the Deputy Ayer case says, is that we have to look at all these other things, not just that language, but we have to look at the purpose and the structure in interpreting it as well. And I think the Hayes case, which was interpreting the same provision here that's discussed in our brief, United States v. Hayes, was interpreting 92133a. Whether or not the element of four – it says that a misdemeanor crime of domestic violence is one under tribal, Federal, State law with a element of the use of force or attempted force against people who meet the different domestic relationships that are put in the statute. And the Court asked, well, are those domestic relationships, do they have to be an element of the underlying predicate offense? And the Supreme Court said there were two – two particular interpretive questions that guided them towards saying, no, that was not the case, and avoiding even using the rule of lenity. One of those was that the interpretation advocated by the defendant would have rendered the statute a dead letter in two-thirds of the States. That's because two-thirds of the States did not, in fact, have any language including a relationship as an element of offense. And so the Supreme Court said, because it would render it a dead letter in two-thirds of the States, we shouldn't consider that Congress meant that at the inception. The same thing would happen here. Far more than two-thirds of the convictions in tribal courts would be completely eliminated by that interpretation of the statute. Secondly, in Hayes, the Court said the other thing that we really have to look at here is this statute has to be interpreted broadly to protect women from domestic violence. And that guides our interpretation well before we get to the rule of lenity. Sotomayor, the Tribal provision was not in the statute at the get-go, was it? No. It was added in 2005. So what was Congress up to when they first passed the statute? Again, getting at domestic violence convictions, and they were they put in these exceptions to make sure that whatever we would argue under Smith, putting in process protection, so that whatever process was due in the prior proceeding was, in fact, granted. So what was the per why did they add in the Tribal provision? So they added the Tribal provision in 2005 for a number of reasons. One, they had these findings that I've talked about, that homicide is such a leading cause, and they wanted to reduce the homicide rate in tribal country. They specifically put down the purpose, we're trying to reduce the violence against women in Indian country. The only way that you can get a misdemeanor conviction of domestic violence in an Indian person on Indian person domestic violence crime is in tribal court. The State courts and the Federal courts don't end up having jurisdiction over those types of misdemeanors. So it was trying to add these tribal misdemeanors into the mix. Ginsburg. Do you think that when Congress passed, first passed the statute, that they had anything else in mind about the right to counsel other than what was afforded under the Sixth Amendment? I think that they wanted to make sure that whatever process was due in the prior proceeding was granted there. And so then it and I think they probably knew that in State courts there could be a higher right to counsel, and that in those cases, if the Sixth Amendment didn't give right to counsel. Do you think they might have just been recognizing there was a floor? That there was a floor? I suppose that that would be a possible interpretation, Your Honor. But I think when you look at these, once you bring in the tribal court convictions of those guys. Well, we assume, you know, when they pass the statute that they're legit, that the Congress folks are on top of all the law, you know, they're knowledgeable about what the law is. And they would have been knowledgeable. And they would be knowledgeable that I would think that the Smith case, which is the only case out there so far, is interpreting the in-the-case language to look at the prior proceeding and what right to counsel is in the prior proceeding, not just the Sixth Amendment right to counsel, but is there an entire other case. Ginsburg. But as Judge Trott said, that's a different case. It's a little bit different. Well, but I think it supports the reason, because if you read this statute, it just means the Sixth Amendment right to counsel. Then there didn't have to be a waiver at all in the Smith case. They didn't need to go through the analysis of whether there was a knowing and intelligent waiver, because you didn't have a Sixth Amendment right to counsel in that case. Did you want to save your some time for rebuttal or? I'll go ahead and reserve the remaining. Unless the Court wants to discuss any other constitutional or statutory questions. Okay. Thank you, Your Honor. Thank you, Your Honors. My name is David Ness. And I'm for, I think, only the second time in my career the appellee in a case. I know. It's an unusual role. I'm kind of nervous. My boss reminded me not to reserve time. You know, this case, I think there were some constitutional arguments made. And I think those constitutional arguments can get somewhat complicated. But as I argued in the district court, I'd make the same argument here. I don't think that this Court needs to get to those constitutional issues. I think that the issues raised by this, in this case, are clearly resolved just by, just by the first rule statutory construction, and that's, let's read the words of the statute and see what they have to say. And read in context, when you read the definition of a domestic violence crime, Congress clearly said, excepted from that definition, cases where the person was either not was, only includes those cases where a person was represented by counsel in the case or knowingly and intelligently waived the right to counsel in the case. And I guess so in the case means in the case, and it's over. I think in the case means the underlying predicate misdemeanor crime of violence. I don't know. Roberts, what do you have to say about Smith? I'm having trouble reading it the way the government does, but what's your response to Smith? They say that's the case that really is the only one that's dealt with this and it's in their favor. I think it's a different case. And I think, as Judge Paya said, that I think that when Congress enacted this statute, they intended to enact a floor. And I disagree with the government's use of, much less analysis of, the legislative history here. And I think I set that out fairly well in my brief. I mean, this whole, the Lautenberg Amendment, the way it was passed, I doubt very seriously that Congress as a whole, in fact, I wrote down in my notes when my esteemed opponent referred to them as they. You know, I don't think they had, and I will echo Justice Scalia here, I don't think they had the government's argument in mind. I think that what they wanted to do was they wanted to ensure that before a person loses a valuable, at that time you might say a privilege, but I think now it has gone further, a valuable constitutional right on par with the other provisions of the Bill of Rights, that the person is afforded counsel in the underlying proceeding. And counsel is right if a Native American that's pulled into tribal court has the funds to hire a lawyer and hires a lawyer to represent him in that case and is found guilty, then I think we would have a much different situation here. Here, we all agree, it was stipulated in court that Mr. First was indigent. He couldn't afford to hire a lawyer. So I guess that gets me to the second problem, I guess, with my government's case, when they continue to argue that Mr. First somehow waived his right to counsel. I don't know how you can waive something that's impossible for you to have. He could not afford a lawyer, and the tribe would not provide him a lawyer, and that was certainly consistent with their own laws, but that the Congress made the decision to say that convictions obtained in that manner cannot then be used to establish a crime of illegal possession of a firearm. Some tribes provide counsel, is that right? They do. The Flathead tribe, Judge, I believe does. In fact, has a pretty good public defender system up there, and that's in Montana. So the only tribe up in Montana that does that? I believe it is, yes. So I think, you know, someone convicted in Flathead tribal court that was provided a public defender could, in fact, be prosecuted under this statute. And the only case I ever tried in tribal court, in fact, was when I was in private practice, and it was a domestic violence case in Flathead tribal court. But there, they, you know, there was a prosecutor who was a lawyer, myself, who was a lawyer, tribal judge was a lawyer, and the person was acquitted, so he couldn't be convicted anyway. But nevertheless, I think had he been convicted, and he was a police officer, you know, he would be precluded from having a firearm at this point in time. But I just, when you look at subsection B-1 and you compare its language to subsection B-2, where Congress clearly tied the jury trial right to whether or not that's afforded in the jurisdiction, and they didn't use that same language in subsection B-1, I think that that answers the question. Had Congress intended to somehow tie the right to counsel to that provided by the I think it could have easily said that in subsection B-1. And as I understand it, that's not even the government's argument, necessarily. They're relying upon the Indian Civil Rights Act. They seem to argue that the sort of a different standard for the States than even the tribes. They, if I understand their argument correctly in their reply brief, it is that we're not looking at the actual tribe. We're just looking at the rights afforded under the Indian Civil Rights Act to determine whether or not they had a right to counsel. And so as a matter of statutory interpretation, and as just a matter of grammatical interpretation, I think that this Court should affirm the district judge's decision to dismiss the indictment just very simply on the words of the statute. Sotomayor, okay. Thank you. Martinez, my first point would be, again, on the in-the-case point. I won't belabor it. But our position is that you have to take the rule of the last antecedent. What is in the case modifying? And it's modifying the right to counsel. So it's the question of what was the right to counsel in the prior case. Secondly, our purpose arguments are not legislative history arguments. The factual findings that are referenced in our brief and the purposes that are referenced in our brief were actually adopted by Congress. This isn't just something out of a hearing. So those are things that this Court looks to in interpreting the statutory language well before you can get to legislative history. Although we would also argue you get to legislative history well before you get to the rule of lenity. The Flathead Tribe does provide counsel. And if they had provided counsel in the Flathead Tribe, yes, you could use it. But if there was a waiver of counsel in the Flathead Tribe, we wouldn't be able to use that conviction because it wouldn't be the Sixth Amendment right to counsel that was waived. There is no Sixth Amendment right to counsel in the Flathead Tribe because the tribes don't have a Sixth Amendment right to counsel. If this Court is going to interpret the statute to simply mean something analogous to the Sixth Amendment right to counsel, that doesn't have the support of the defendant's briefing in terms of suggesting that there's one meaning we know about. In our brief in footnote 8, we cite numerous statutes where when Congress wanted to talk about a right that was analogous to the Sixth Amendment right to counsel, they did so. And finally, I think you have to look again at what the Hayes Court said, that there's no suggestion that if this Court decides, adopts the defendant's interpretation, that somehow all the tribes that don't provide counsel are now going to go out and spend their limited resources, instead of spending on the education or medical treatment they choose to spend it on, to now provide a right to counsel just so that that could be used as a predicate offense at some point in the future in a Federal proceeding. Roberts. Does your interpretation give fair warning to people who might fall within the ambit of this statute? I think under the ---- It seems to me that you have to be a, you know, a super-lawyer who goes over all kinds of hurdles and tortures some language to get there. I mean, if I'm just somebody who might get trapped by this statute, and I take a look at it, I don't think it gives me fair warning. The reason I think it does here, and this situation, this case I think is a good situation to demonstrate that, Mr. First was advised that he had the right in tribal court to retain counsel at his own expense. He was advised that he has that right. Right. He's indigent, so. Yeah. Well, and he was ---- but he was advised if he could afford counsel, which Congress decided that's what we're going to provide in tribal court, that he could have had it. But you're right, he was indigent. But he then went ahead and he did waive that right to retain counsel. Now, maybe he didn't have a choice because he's indigent, but he went ahead and he specifically waived that right to counsel. So he had noticed that he had waived the right to counsel that was presented in that proceeding, in that case. And so I think the statute does provide that notice. And again, I think when we go ---- if we take the interpretation that Mr. First is advocating, then this exception all of a sudden swallows the rule in all the tribal proceedings, which the Supreme Court said in Hayes is not something we should do. If it's going to make it a dead letter at the inception, that's not what Congress meant to do here. It meant to forward these purposes of making sure that women in Indian country get this protection. And that's why it added tribal law. Tribal law, as Judge Pai has pointed out, wasn't there before. So it says we've got this problem in tribal country. We need to get at it. And the way we're going to get at it is add these convictions. And ---- Kennedy, how about the argument that the jury trial language is different than this language, and we ought to take a look at that? I think the way the jury trial language is different ---- It is different. It is certainly different. But if you look at this, there's a jury ---- there's not a jury trial in every jurisdiction. There is a right to counsel in every jurisdiction. So for one reason, it had to differ for that, because it wouldn't have said ---- if you just sort of said the way that the jury trial language is written, and you just stuck in the right to counsel there, it would assume that there were jurisdictions where there might not be a right to counsel. But beyond that, the ---- I think in the deal decision that's cited in our brief ---- Well, some States provide the right to counsel that's greater than what's afforded under the Sixth Amendment. I'm sorry. Could you say that? In some States, the right to counsel is greater than ---- at the misdemeanor level than in the ---- Right. And our view would be that they would then have to waive that higher right to counsel. And our view would also be that if a tribe, in fact, provided, for instance, the Flathead tribe, you would have to waive the right to counsel provided by the Flathead tribe. So if you were in a tribal court governed by Flathead jurisdiction, Flathead law, and they provide a right to appointed counsel, you would have to waive that right to appointed counsel there. So that ---- I think Mr. Ness didn't think that was our position. But that is our position. It's the right to counsel that the other jurisdiction provides, whether that's higher than the Sixth Amendment, whether that's lower than the Sixth Amendment. I'm not quite sure I'm following the implications of what you said. So in the Flathead case, it wouldn't swallow up the general statute then. If you adopt our interpretation, if you adopt their interpretation, you would have to waive the Sixth Amendment right to counsel to use a waiver from Flathead court. And there is no Sixth Amendment right to counsel in Flathead land. So they couldn't waive a Sixth Amendment right to counsel. Unless you adopted the statute, again, to be simply analogous to that. But then you've got all these tribes, the vast majority of which, that don't provide that appointed counsel. And you're in the same situation as in Hayes, where the majority of the States didn't provide that right, so we're not going to interpret it that way. Well, the majority of the tribes don't provide that right. And so to interpret it that way, you're making the statute, again, a dead letter from its inception. I think the constitutional arguments are set out well in our brief, and the only thing I would say is the doctrine of constitutional avoidance is where you have a serious constitutional problem if you adopt one interpretation. I think if you look, if you adopt our interpretation, you're not going to have that serious constitutional problem. And so that's not a reason to not interpret it the way the government has advocated. Thank you, Your Honors. Thank you. The United States v. First is submitted.
judges: Ripple, Trott, Paez